## W. B. Knight Machinery Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 4834.   Promulgated March 19, 1946.

*Stanley S. Waite, Esq.*, for the petitioner.
*Roy C. Hormberg, Esq.*, for the respondent.

522

528

OPINION.

Van Fossan, *Judge*: The single issue is whether or not the petitioner is entitled to relief under the provisions of section 721, Internal Revenue Code.[1]

[1] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, * * *

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:

(A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or

(B) Income constituting an amount payable under a contract the performance of which required more than 12 months; or

(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; or

(D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's accounting period or method of accounting; or

(E) In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease; or

(F) Income consisting of dividends on stock of foreign corporations, except foreign personal holding companies.

All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary.

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income

The petitioner contends that its income derived in 1940 from the sale of Nos. 20, 30, and 40 Knight milling machines should be decreased by excluding therefrom the portion of the net abnormal income attributable to the period from 1936 to 1939, inclusive, by reason of the expenses incurred and disbursed in the "development of tangible property" (namely, the machines) during that period. The respondent asserts that the section is not applicable.

The history of section 721 is elaborately set forth and discussed in *Premier Products Co.*, 2 T. C. 445, and *W. B. Davis & Son, Inc.*, 5 T. C. 1195, and will not be repeated here. Its purpose is to afford relief to taxpayers who receive income from various sources which is inherently abnormal in character or in amount. The statute specifically establishes six classes of such income, but also includes any income not precisely within these categories, subject, however, to regulations prescribed by the Commissioner with the approval of the Secretary.

In the case at bar the petitioner claims, and the respondent agrees, that relief, if any, should be granted under subsection (a) (2) (C). There is no controversy as to the character of the income. The petitioner's primary business is the manufacture of milling machines. It also does job work and makes spare parts as incidental activities. Likewise, there is no disagreement as to the amount of income derived from the sale of the new Nos. 20, 30, and 40 Knight millers, nor as to the amount of development expenditures allocable to each of the years in the critical period. Such expenditures made in the taxable year are not taken into consideration in the computation relating to the period from 1936 to 1939, inclusive.

The respondent challenges the application of the statute on the sole ground that the expenditures denominated by the petitioner "development expenses" were not such expenses within the meaning of the statute. He claims the petitioner did not develop a new milling machine,

---

that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. * * *

(c) COMPUTATION OF TAX FOR CURRENT TAXABLE YEAR.—The tax under this subchapter for the taxable year, in which the whole of such abnormal income would without regard to this section be includible, shall not exceed the sum of:

(1) The tax under this subchapter for such taxable year computed without the inclusion in gross income of the portion of the net abnormal income which is attributable to any other taxable year, and

(2) the aggregate of the increase in the tax under this subchapter for the taxable year (computed under paragraph (1)) and for each previous taxable year which would have resulted if, for each previous taxable year to which any portion of such net abnormal income is attributable, an amount equal to such portion had been included in the gross income for such previous taxable year.

(d) COMPUTATION OF TAX FOR FUTURE TAXABLE YEAR.—The amount of the net abnormal income attributable to any future taxable year shall, for the purposes of this subchapter, be included in the gross income for such taxable year. * * *

(e) APPLICATION OF SECTION.—This section shall be applied only for the purpose of computing the tax under this subchapter as provided in subsections (c) and (d), and shall have no effect upon the computation of base period net income. * * *

but merely perfected and produced new models of its machines already established on the market and sold to the trade. He contends that these are but the normal problems and processes which all manufacturers must meet and provide for periodically. He cites and relies on section 30.721–3 of Regulations 109, as amended,[2] and asserts that "in the light of the events in which such items had their origin" (i. e., the controverted items before us) they are not attributable to prior years but only represent the usual expenses incident to the improvement of the petitioner's product.

Thus the issue is narrowed to the single question: Was the work of creating, designing, experimenting with, and testing the milling machine which ultimately became the No. 40 Knight miller a routine activity, customarily required in the conduct of the petitioner's business and consistent with its previous business experience, or did it constitute a radical departure from the art and methods of manufacture employed by the petitioner theretofore and thus produce a new and different machine having little relation to the old product?

The facts as stipulated and adduced at the hearing demonstrate that the new No. 20, No. 30, and No. 40 Knight millers were new machines which were created, designed, and perfected to do work, both in

---

[2] SEC. 30.721–3. *Amount attributable to other years.*—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.

\* \* \* \* \* \* \*

Specific methods of treating items of net abnormal income of the six classes specified in section 721 (a) are set forth in sections 30.721–6 to 30.721–11. These methods are to be applied subject to the provisions of this section.

\* \* \* \* \* \* \*

SEC. 30.721–8. *Exploration, discovery, prospecting, research, or development.*—The third class of potentially abnormal income specifically set forth in section 721 (a) (2) is income resulting from exploration, discovery, prospecting, research, or development of tangible property (such as mines, oil producing property, and timber tracts), patents, formulae, or processes, or any combination thereof, extending over a period of more than 12 months. The exploration, discovery, prospecting, research, or development must be that of the taxpayer. Income resulting from activities of such a character carried on by a predecessor is not entitled to the treatment provided in section 721.

\* \* \* \* \* \* \*

kind and extent, which the old machines could not perform. The old type of machine was manufactured first in 1906. From that year until 1935 the No. 1 machine and its successors had been made and sold with only minor changes in construction. In 1935 the petitioner's officers became convinced that those machines could no longer serve their purpose in competition with others on the market and that they were rapidly becoming obsolete. They knew that drastic measures must be taken to keep the petitioner in business and consequently they undertook to design and construct a machine that would be much more efficient than the old type and would be capable of performing more kinds of operations. In short, it must meet the increasingly exacting demands of the trade.

The activities and work done by the petitioner, through its officers, from 1936 to 1940 resulted in the construction of Knight miller No. 40. We have set forth in the facts the fifteen or more innovations which were incorporated therein. Some were wholly new. These features were successfully assembled in one harmoniously effective machine which bore only superficial resemblance to the last of the old line of millers prior to 1936. Of course, the principal business of the petitioner remained the same, producing milling machines, and the functions of those machines were somewhat similar both in the new and old types, but the expenditures in question were made for the purpose of creating, for the old type, a substitute which in itself was entirely new and essentially different from its predecessor. This it was able to do.

Since placing it on the market, the petitioner has made no changes in No. 40 or in its smaller counterparts Nos. 30 and 20, except such substitutions of materials as were necessitated by war conditions. The petitioner deemed it commercially successful in 1940. The facts in the case before us bring it within the broad scope of section 721 (a) (2) (C) and the petitioner is entitled to compute its income as provided in section 721 (c).

The record shows the proper amounts of expenditures allocable to prior years. The parties have stipulated that the factor 2.6152 represents the improvement in business conditions and the growth in the volume of sales for 1940 over the period of 1936 to 1939, inclusive, as contemplated in section 30.721–3, Regulations 109, as amended, and have recognized and used that factor in their proposed computations of net abnormal income, as set forth in the facts. They differ, however, on the proper basis of such computation. The respondent contends that the entire gross profit derived by the petitioner from all operations in 1940 should be the basis of the computation, while the petitioner insists that the gross profit basis should be restricted to that derived from the sale of models Nos. 20, 30, and 40.

The petitioner's operations were classified in the findings of fact under the heads of old style Knight milling machines; attachments

for Knight milling machines; purchased attachments; repair parts; job work; and model Nos. 20, 30, and 40 Knight milling machines. In the stipulation, all "expenditures made by the petitioner during the years 1936 to 1940 inclusive, in developing its new Knight Milling Machines" are segregated. The class of income to which the expenditures related is thus defined and established. Expenditures applicable to the petitioner's other operations were charged to such operations. No "development" or other expenses specified in the statute relating to such other operations were incurred or made, nor were they included in the stipulated figures. Thus we have a proper foundation for computing the tax with relation to the class of income specifically provided for by the statute and attributable to other taxable years.

The respondent argues that the petitioner was engaged in only a single activity, "manufacturing," and that no provision has been made in the regulations for the division of income therefrom into classes of income derived from the manufacture of each individual product. He cites the regulations (sec. 30.721–8, Regulations 109, as amended)[3] in support of his argument and observes that "any material sales in 1940 of the model numbers 20, 30, and 40 milling machines would of necessity be many times the sales of those machines in the base period for the reason that those particular models were not being sold in the base period, although other milling machines of a like or similar construction and serving the same purpose were being manufactured and sold in such base period."

The respondent's position is consonant with his theory that the production of the new machines was but a process of improving the old machines. So far as this case is concerned, we have discarded that theory. Furthermore, we believe that the statute means just what it says—that any income of the type or class specified in subsection (a) (2) of section 721 is to be recognized in applying the relief measures which the statute grants.

The generic term "manufacture" might cover many separate and wholly distinct activities or operations. In this case only the *income* which arises from the "exploration, discovery, prospecting, research or development of tangible property, patents, formulae, or processes, or any combination of them extending over a period of 12 months" occasions the application of the statute. The statute deals with the

---

[3] Sec. 30.721–8. *Exploration, discovery, prospecting, research, or development.*—* * *
An item of income resulting from exploration, discovery, prospecting, research, or development is all such income for the taxable year arising out of a unit of property such as an oil lease or other mineral property defined in section 19.23(m)–1(*i*), a patent, or a formula. If the taxpayer engages in manufacturing, marketing, mining, oil production, or similar activities, only such portion of the resulting income as is attributable to exploration, discovery, prospecting, research, or development is within the class of income described in this section. * * *

source of the income, not the character of the taxpayer's activities, whether they be single or multiple. The property of the petitioner was developed in order to enable it to carry on its business. The abnormal income was derived from the sale of that property.

Therefore, restricting the application of section 721 to the income resulting from the development of the new Knight millers, our task is to determine, first, petitioner's net abnormal income as that term is defined in section 721 (a) (3).

The parties have stipulated four different methods of the computation to be used in determining petitioner's net abnormal income for the year 1940, depending upon the factor of gross income that is to be used as a starting basis. They also agree that this Court may, of course, choose its own method of computation. On consideration, we find ourselves in agreement with none of the stipulated methods.

It is manifest from what we have said above that it is our view that the gross profit for the year 1940 from column (3) should be used as a starting point. This figure is $97,590.30. However, we can not agree that the computation which has been made by using the gross income in column (3) is correctly made. It seems clear to us that it does not follow the statute. In the computation the following appears: $1.25 \times \$3,810.61 \times 2.6152 = \$12,456.88$, and the latter figure is deducted from the gross profit for 1940. We find no statutory warrant for thus using the figure 2.6152 in that connection. Those figures are very vital in making the final determination as to what part of the net abnormal income is to be attributable to other years, as we shall presently discuss, but they have no place in the computation of the net abnormal income itself. The statute prescribes how the net abnormal income is to be computed. Section 721 (a) (3), *supra*, provides that it shall be determined by subtracting from the amount of the abnormal income "(A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income." Therefore, starting with column (3) as the base (for reasons which we have already stated), the computation under section 721 (a) (3) is as follows:

(a) Gross profit for year 1940 from column (3)_____ $97,590.30

(b) *Deduct under section 721 (a) (3) (A):*
    125% of $3,810.61 from column (3)_____ 4,763.26

Excess of (a) over (b)_____ 92,827.04

(c) *Deduct under section 721* (*a*) (*3*) (*B*):

Direct costs and expenses remaining after deducting from total costs and expenses those costs and expenses which were allocated to cost of sales on petitioner's cost record, $30,780.32, allocated in the same ratio as $97,590.30 bears to $137,543.29, that is, $21,839.38, which latter amount is further allocated in the same ratio as $92,827.04 bears to $97,590.30_____ $20,773.43

Net abnormal income_____ 72,053.61

Thus we find that petitioner's net abnormal income for 1940 is $72,053.61.

But the mere fact that a taxpayer has net abnormal income in a taxable year does not entitle it to relief under section 721. There must be a further finding under the evidence as to what part, if any, of such net abnormal income is attributable to other years. If none is so attributable, then the taxpayer gets no relief. See our discussion on this point in *Premier Products Co., supra.* Therefore, we must, under the evidence, determine what portion, if any, of petitioner's $72,053.61 net abnormal income is attributable to other years.

First, we know that no part of such income can be so attributed which was due solely to improvement in business conditions. Section 30.721–3 of the Regulations provides, among other things:

* * * Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions.

The parties are in agreement that: "Improvement in business conditions and growth in the volume of sales for 1940 over the period 1936 to 1939, inclusive, is represented by the factor 2.6152." Therefore, applying this factor to petitioner's net abnormal income of $72,053.61, we find that $44,501.76 was due to improved business conditions and none of it can be attributed to prior years under the applicable statute and regulations. This leaves $27,551.85 of petitioner's net abnormal income which was not due to improved business conditions and which, we think, may fairly be attributed to the expenditures which petitioner made during the period 1936 to 1940 in bringing its machines Nos. 20, 30, and 40 to commercial production. These expenditures are shown in detail for the years 1936–1940, inclusive, in our findings of fact. The percentages for each year are shown. From these percentages it seems clear that 35.79 percent of the $27,551.85 above mentioned must be attributed to 1940 and the balance of the $27,551.85 is to be attributed to the prior years 1936, 1937, 1938, and 1939, in accordance with the percentages set opposite the respective years in our findings of fact. The parties seem to be agreed that whatever net abnormal

income we find is to be attributed to other years should be allocated in accordance with the percentages shown in our findings of fact. Section 30.721–3 of the Commissioner's regulations says in part:

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events.

Under the facts of the instant case, we think the allocation by these percentages meets the test of the foregoing regulations and we direct that it be used. Cf. *W. B. Davis & Sons, Inc.*, 5 T. C. 1195.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*