SOUTHWESTERN OIL & GAS COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1244. Promulgated May 23, 1946.

*Robert A. Rundle, Esq.*, and *J. Stanton Carson, Esq.*, for the petitioner.

*Richard L. Shook, Esq.*, for the respondent.

**OPINION.**

SMITH, *Judge*: The general purpose of section 721, Internal Revenue Code, added by section 201 of the Second Revenue Act of 1940, as amended in 1941 and 1942, is to relieve the burden of the excess profits tax in certain hardship cases by permitting the reallocation of certain portions of its income, described as net abnormal income, from the year of its actual realization to other years. The tax for the current year is not to exceed the sum of the tax for such year computed without

the inclusion of the income attributable to prior years and the resulting increase in the tax for such prior years (sec. 721 (c)).

Section 721 (a) defines the terms "abnormal income" and "net abnormal income." We are not so much concerned with those definitions in this proceeding because the parties have stipulated that a certain portion of petitioner's income for the taxable year 1940, to wit, $137,570.66, was "net abnormal income," being income "resulting from exploration, discovery, prospecting, research, or development of tangible property * * * extending over a period of more than 12 months." (Sec. 721 (a) (2) (C).)

Section 721 (b) provides that:

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. * * *

The parties here are in disagreement only as to the portions of the stipulated net abnormal income which are attributable to prior taxable years. The respondent determined in his deficiency notice that none of it was. He now concedes, however, that $15,586.59 of the net abnormal income from the Benoist lease is attributable to 1939.

Pursuant to the authority specifically granted in section 721 (b) above, the Commissioner promulgated regulations covering the determination of the amount of net abnormal income attributable to other taxable years. Regulations 103 provides in part as follows:

SEC. 30.721–3. *Amount attributable to other years.*—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 percent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the

taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.

\*     \*     \*     \*     \*     \*     \*

SEC. 30.721–8. *Exploration, discovery, prospecting, research, or development.*— The third class of potentially abnormal income specifically set forth in section 721 (a) (2) is income resulting from exploration, discovery, prospecting, research, or development of tangible property (such as mines, oil producing property, and timber tracts), patents, formulae, or processes, or any combination thereof, extending over a period of more than 12 months. The exploration, discovery, prospecting, research, or development must be that of the taxpayer. Income resulting from activities of such a character carried on by a predecessor is not entitled to the treatment provided in section 721.

An item of income resulting from exploration, discovery, prospecting, research, or development is all such income for the taxable year arising out of a unit of property such as an oil lease or other mineral property defined in section 19.23 (m)–1 (*i*), a patent, or a formula. If the taxpayer engages in manufacturing, marketing, mining, oil production, or similar activities, only such portion of the resulting income as is attributable to exploration, discovery, prospecting, research, or development is within the class of income described in this section. \*    \*    \*

In general, an item of net abnormal income of the class described in this section is to be attributed to the taxable years during which expenditures were made for the particular exploration, discovery, prospecting, research, or development which resulted in such item being realized and in the proportion which the amount of such expenditures made during each such year bears to the total of such expenditures. Allocation of items of net abnormal income of the class described in this section must be made according to the principles set forth in section 30.721–3.

It will be noted that the last paragraph of the foregoing regulations directs that "Allocations of items of net abnormal income of the class described in this section must be made according to the principles set forth in section 30.721–3." That section of the regulations reads in part:

\*   \*   \* To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. \*   \*   \*

Thus, to bring in harmony the various provisions of the regulations and the statute, we must compute the amount of the net abnormal income attributable to prior years by eliminating from the net abnormal income the portions thereof which resulted from (1) high prices, (2) low operating costs, or (3) increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer.

In computing the amount of the net abnormal income which he now concedes is attributable to prior years, viz., $15,586.59, the respondent reduced the stipulated net abnormal income of $108,522.89 from the

Benoist lease by $14,042.29 as the amount due to higher prices and $75,427.64 representing the amount due to lower operating costs, leaving a balance of $19,052.96, a portion of which, or $15,586.59, he allocated to the production and sale of oil from the new wells.

It is stipulated that the gross income for 1940 attributable to higher prices was $17,809.86 for the Benoist lease and $5,015.12 for the Warfield lease. In other words, petitioner realized $22,824.98 more income in 1940 than it would have realized had it received the same prices for its crude oil in that year that it received during the base period. We think that all of such income was due to higher prices in 1940, which we take the stipulation to mean, and, therefore, should not be allocated to prior years. Since petitioner's operating costs would have been the same whether the oil was sold for a higher or lower price, we see no reason for taking them into account in determining the amount of income attributable to the higher prices.

There is no agreement between the parties as to the amount of the current year's income, if any, which is attributable to "low operating costs." However, the parties have stipulated the comparative operating costs, exclusive of drilling costs and depletion, the gross income and expenses, and the percentage of expenses to gross income, for both the current year 1940 and the prior four years of the base period. From those figures the respondent has computed the amount due to lower operating costs at $75,427.64 for the Benoist lease and $30,259.30 for the Warfield lease. As to the Warfield lease, the amounts which the respondent found to be due to high prices and low operating costs exceeded the amount of the net abnormal income from that lease, so that nothing remained for allocation to prior years. The respondent's computation is based upon a comparison of the percentages of operating costs to gross sales in 1940 and in the prior years of the base period. Petitioner contends that this method of computing the amount of net abnormal income attributable to low operating costs is erroneous in that it is based upon a comparison of the percentage of operating costs to gross sales. It argues that the expenses were not dependent upon, and were only remotely related to, the volume of production and sales; that they remained more or less constant for each producing well, regardless of the amount of oil which it produced.

According to the stipulated facts the monthly wages per man paid in 1940 were approximately $20 higher than during the base period. Likewise, the cost of materials was $8,176.24 in 1940 against an average cost of $7,869.56 for the base period. The total per well operating costs, exclusive of drilling costs and percentage depletion, were $3,024.06 in 1940 against an average of $1,289.39 for the base period.

While it is true that the per barrel operating costs declined as the volume of production increased, and was therefore considerably less in 1940 than during the base period, this decline was due to the increased volume of production resulting from discovery rather than to other factors associated with cost of production, such as wages, cost of materials, overhead, etc.

We agree with the petitioner's conclusion that none of its net abnormal income for 1940 may be attributable to low operating costs not directly related to discovery.

The respondent makes the further contention in his brief that certain undetermined portions of the stipulated net abnormal income for 1940 resulted from factors not considered in his determination, viz., "increased demand" for the crude oil and "improved business conditions."

There is no merit in this contention, even if we consider those questions timely raised in the respondent's brief. The evidence is that during the base period, as well as in 1940, there was a ready demand for every barrel of oil that could be produced from the field. So far as it affected the petitioner, there was no increased demand for oil in 1940.

As to the alleged improved business conditions, the respondent points out that (1) gross sales were greater, (2) the number of employees was increased, (3) sale prices were higher, and (4) the profit per unit (barrel of oil) was higher.

We have already determined that none of the $22,824.98 resulting from the higher prices which prevailed in 1940 can be attributed to other years under the regulations. None of the other factors mentioned above necessarily indicated improved business conditions.

As the basis for the stipulation that petitioner had net abnormal income of $137,570.66 in 1940, the respondent has admitted that that portion of petitioner's income resulted from "exploration, discovery, and development." After the necessary adjustment for the portion thereof attributable to higher prices in accordance with our above ruling, the remainder should be "attributed to the taxable years during which expenditures were made for the particular exploration, discovery, prospecting, research, or development which resulted in such item being realized and in the proportion which the amount of such expenditures made during each such year bears to the total of such expenditures," as contemplated by the regulations quoted above. Cf. *W. B. Knight Machinery Co.*, 6 T. C. 519.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*