PRODUCERS CROP IMPROVEMENT ASSOCIATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6404, 9544.   Promulgated August 16, 1946.

*C. C. Chapelle, Esq.*, for the petitioner.
*David F. Long, Esq.*, for the respondent.

OPINION.

Murdock, *Judge*: "Abnormal income" as defined in section 721 (a) (1) includes "income of any class includible in the gross income of the

taxpayer for any taxable year * * * if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence." Section 721 (a) (2) (C) provides that income resulting from research or development of tangible property or processes extending over a period of more than twelve months is a separate class of income.

The first contention of the petitioner is that it had in 1941 abnormal income within the meaning of section 721 (a) (2) (C), as set forth above, and a part of such income must be attributed to prior years because income of 1941 was in part the result of expenditures made in prior years to develop the hybrid corn product of the petitioner. Counsel for the petitioner has never succinctly set forth the facts upon which it relies and explained, step by step, under the several provisions of 721, how particular facts disclose, first, that there was in 1941 abnormal income and the amount thereof, second, that there was net abnormal income in a certain amount, and, finally, that a definite portion thereof for some proper reason under the facts of this case and the statute and regulations should be allocated to prior years. He has not even made clear in his brief or elsewhere just what income he contends comes within the class defined in 721 (a) (2) (C).

It appears that this petitioner has made expenditures in prior years in developing hybrid seed corn, the process of development extended over a period of more than twelve months, and the sales in any year may be attributable in part to expenditures made in prior years, but that it is entitled to relief under 721 is not clear. It behooves counsel for a petitioner to state his case at least so that it can be understood, and to prove and call attention to sufficient facts to support his theory. He may not safely rely upon the Tax Court to dig out and develop a case for him. That is not the function of the Court, and it does not have the time or the facilities to do the work of counsel. Furthermore, it would not be fair to the Commissioner if the Court surprised him by developing in its opinion a case against the Commissioner which he had no way of anticipating or contesting. This is not to say that the Court is indifferent to the results reached or that it would not turn its hand to do justice where it could properly assist one party or the other to that desirable end. The point is that the parties have the primary duty of presenting their cases, and they can not shift that duty to the Commissioner or complain if the Court does not exceed its proper function to make up for counsel's shortcomings.

We might infer from the petitioner's brief that it thinks the income tax net income or loss figures for the years 1938 through 1941 should

be used to compute abnormal income under 721 (a) (1) and (2) (C). But such a theory is unsound. The "class of income" described in (2) (C) and in (1) is a "class includible in the gross income." Those provisions and (a) (3), relating to the elimination of costs and expenses, show clearly that a "class" is not to consist of income tax net income, net income, net loss, or any combination thereof.

There is testimony that the petitioner classified its sales into retail and wholesale and that only retail sales were profitable. It might be that there was some abnormality in 1941 in retail sales, but the petitioner makes no such contention and the facts necessary for the computations required by the statute are not apparent. We are unable to make progress upon any theory which might possibly be helpful to the petitioner.

Furthermore, if some net abnormality in income for 1941 were disclosed, there would still be the difficulty of allocating some specific part of it to prior years. Here again counsel for the petitioner remains inarticulate. The production of hybrid seed corn has been a continuous business with the petitioner since it began operations. Retail sales in 1941 may be attributed in part to expenditures made in that year and in part to expenditures made in prior years. Expenditures made in prior years may be allocated in part to the sales made in those years and in part to development. But we can not make any proper allocation on this record. Cf. *Geyer, Cornell & Newell, Inc.*, 6 T. C. 96. Some of the hybrid seed corn sold was raised within the fiscal year from purchased "single cross" seed and there would be no reason to allocate income from such sales to other years. Some of the increase in sales for 1941 may have been due to increased demand for hybrid seed corn resulting from improved business conditions, and some of the profits may have been due to reduced costs. No allocation of such profits to prior years is permitted under the regulations. See section 30.721–3 of Regulations 109, as amended by T. D. 5045, C. B. 1941–1.

The Court made it clear at the trial that it did not understand the petitioner's case and cautioned counsel for the petitioner about the numerous difficulties involved. He assured the Court that he would supply the answers in his brief. He has not done so or even attempted to do so in several important particulars. The petitioner has fallen far short of showing that it is entitled to any relief or benefit under section 721. The Commissioner did not err in determining the excess profits tax deficiencies for 1941 and 1942.

There are apparently only two differences between the parties in regard to the deductions for patronage dividends, and discussion will be limited to those two points.

The Commissioner determined that the amount available for patronage dividends for 1942 was $17,047.54 ($27,129.91, the earn-

ings for the year, minus $10,082.37, the dividends declared upon the preferred stock during the year.) The petitioner contends that only $2,537.40 should be deducted on account of dividends accrued upon the preferred stock. This seems to represent the amount which accumulated during 1942. It is provided that dividends shall be presumed to be distributed from the most recently accumulated earnings. Sec. 115 (b). The entire amount of the dividends declared on the preferred stock in 1942 accrued in that year, became a debt, and serves to reduce the amount of 1942 earnings available for patronage dividends.

The other disagreement on patronage deductions is as to the percentage of available earnings to be attributed to sales to "members." Apparently both parties understand who the "members" are and it is not important that we do not. Both parties rely upon A. R. R. 6967, C. B. III-1, p. 287, 289, which provides that "In the absence of evidence to the contrary, it will be assumed that the dealings with members and nonmembers are equally profitable" and that the amount available for refund consists of earnings from member and nonmember business in proportion to the total amount of business transacted with each group. The Commissioner determined that 50.1 per cent of the amount available for 1942 and 72.99 per cent for 1943 was attributable to sales to members and, therefore, deductible. He included wholesale sales as nonmember sales in his computation of the percentages. The petitioner contends that wholesale sales should be disregarded, since they did not result in any profit. The uncontradicted unchallenged evidence is that wholesale sales never resulted in a profit. They may be disregarded in allocating the profits between member and nonmember sales.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*