ATLUMOR MANUFACTURING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13022, 16945. Promulgated June 3, 1949.

*George E. H. Goodner, Esq.*, for the petitioner.
*S. Earl Heilman, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The parties have not called the attention of the Court to any provision of the Stabilization Act of 1942 or to any

orders or regulations of the President issued pursuant thereto which might have any effect upon this case. The respondent does not argue that the petitioner, under its oral agreement with Moore and Welmers, had a right to accrue the percentages during 1943 and 1944, and he does not argue that there was any prohibition under the Stabilization Act against the accrual of those obligations for 1943 and 1944 in 1945. He "agrees that the proper year of accrual for any bonuses on petitioner's net profits was the fiscal year 1945." He argues that the salaries of $4,800 for Moore and $4,160 for Welmers for the fiscal year 1945 constituted reasonable compensation for their services and, therefore, no additional amount should be allowed as a deduction under section 23 (a) (1). He also argues that the notes given were worthless, and, in the alternative, that they should be discounted to find their present worth. The question here is not the value of the notes to Moore and Welmers, since accrual of an obligation by the obligor in terms of money does not depend upon worth of the evidence thereof to the obligee. The agreements between the petitioner and Moore and Welmers were the result of free bargaining before the services were rendered and were not influenced by any consideration on the part of the petitioner other than that of securing the services of these men on fair and desirable terms. See Regulations 111, sec. 29.23 (a)–6 (2). The entire amount of $31,368.44 was deductible under sec. 23 (a) (1) from 1945 income as a reasonable allowance for compensation for personal services rendered to the petitioner by Moore and Welmers. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115.

The Commissioner, in computing the petitioner's equity invested capital for each taxable year, eliminated from its accumulated earnings and profits as of the beginning of the taxable year, its income and excess profits taxes for the preceding year. The petitioner argues that those taxes were not due, payable, or paid at the beginning of the taxable year, they were not accruable at the beginning of the taxable year by a corporation keeping its books and filing its returns upon an accrual basis of accounting, and, therefore, they should not be eliminated from accumulated earnings and profits as of the beginning of the taxable year. It cites *Fawcus Machine Co.* v. *United States*, 282 U. S. 375. The Commissioner did not err.

Section 718 provides, *inter alia*, that the equity invested capital of a corporation shall include "The accumulated earnings and profits as of the beginning of such taxable year." Section 35.718–2 (a) of Regulations 112 provides, in part, that "In computing accumulated earnings and profits as of the beginning of the taxable year, a taxpayer keeping its books and making its income tax returns on the accrual basis shall subtract the income and excess profits taxes for the preceding taxable year." *United States* v. *Anderson*, 269 U. S. 422, is

authority for accruing a tax even in advance of assessment where all of the events have occurred which fix the amount and determine the liability of the taxpayer to pay, and *Lisk Manufacturing Co., Ltd.*, 11 B. T. A. 179, 184, is authority for the proposition that "Earned surplus is not properly computed until provision for all liabilities has been made." Cf. *Altschul's Inc.*, 9 T. C. 697, and *Gifford-Hill & Co.*, 11 T. C. 802, holding that there should be included in accumulated earnings and profits as of the beginning of the year the amount of the postwar excess profits refund credit provided by section 780 in respect to excess profits tax for the preceding year.

*Fawcus Machine Co.* v. *United States, supra,* cited by the petitioner, also supports the Commissioner's determination. The taxpayer there was on an accrual basis and did not eliminate from its invested capital for 1919 any amount representing income and excess profits taxes for 1918. The Commissioner had a regulation providing that "Amounts payable on account of such taxes for the preceding year may be included in the computation of invested capital only until such taxes become due and payable." He reduced invested capital for 1919 by the amount of income and excess profits taxes for 1918 as of the dates in 1919 when the installments became due. The Supreme Court affirmed a judgment of the Court of Claims in favor of the United States and held that the regulation was valid. The Court said: "A corporation cannot claim to have accumulated any net income in any year until provision is made for taxes accrued, based on net income for the same year." The Court went on to indicate that the accounts for 1918 should have been readjusted by including accruals at the end of the year for the taxes based on income of that year in order to reflect clearly its income for 1918. Thus, the opinion not only supported the regulation then in effect requiring a prorated elimination of the 1918 taxes from 1919 invested capital, but would also support the present regulations requiring the elimination from invested capital as of the beginning of the taxable year of the entire tax liability in respect of the preceding year. Decision on this point is for the respondent.

The third and final issue urged for decision by the Court is whether section 721 (a) (2) (C) applies, with the result that the petitioner has some net abnormal income for 1943 attributable to prior years within the provisions of section 721. The petitioner summarizes its contention as follows:

As the result of the development of a line of furniture, petitioner in 1943 realized abnormal income which it is entitled to allocate to the years of development under the provisions of sec. 721 of the Internal Revenue Code.

A separate class of income is described in section 721 (a) (2) (C) as:

Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months.

The petitioner would divide its income into two classes, jobbing and manufacturing. It argues that its 1943 manufacturing income resulted from development of tangible property or processes, or a combination of the two, extending over a period of more than 12 months preceding 1943, during which period it "developed" tangible property, to wit, a line of cheap, nonperiod furniture, properly balanced, styled, and priced, plus a sales force capable of selling and a list of customers interested in buying such a line of furniture, which development enabled the petitioner to sell its manufactured products profitably during 1943. It regards the actual application of section 721 as merely a matter of mathematics. The Commissioner argues that the activities of the petitioner prior to 1943, in trying various products before it found one which it could manufacture profitably, can not be regarded as "development of tangible property" within the meaning of section 721 (a) (2) (C) and that the petitioner has failed to prove facts necessary in applying section 721.

It is essential to the petitioner's contention that the manufacturing income be recognized as a separate class of income. That would be an extremely broad classification. This Court held, in *Producers Crop Improvement Association*, 7 T. C. 562, 566, that "a 'class' is not to consist of income tax net income, net income, net loss, or any combination thereof." The petitioner would merely eliminate its income from jobbing and regard its entire remaining income as a class within the meaning of section 721. There is also the question of whether any such class could be regarded as due to one or more of the activities mentioned in (C). The evidence on this point does not disclose in any detail what was done to "develop" the line.

The petitioner has failed to prove, even within reasonable limits, the amount of its income from manufacturing for 1943 and for the four prior years. The amount of gross sales of products manufactured and gross sales from jobbing, together with some of the costs and expenses separately incurred in each of the two activities, are in evidence, but only the totals of other expenses and deductions are in evidence, and the petitioner seeks to allocate them between manufacturing and jobbing in proportion to gross sales. It can not be assumed, in the absence of proof, that such an allocation would even approximate the fact. Indeed, the inference is strong that a number of these items were incurred primarily or exclusively in the manufacturing part of the business. The actual figures are in evidence for direct labor and they show that the direct labor actually charged to manufacturing far exceeds that charged to jobbing per dollar of gross sales from each source, yet the petitioner would allocate "factory burden," including coal, electricity, and depreciation on machinery and equipment, on the basis of sales. The evidence is de-

ficient in not showing what the actual costs and expenses attributable to each department would be or in showing some better method of allocation than that of sales.

The petitioner further contends that its entire manufacturing income for 1943 resulted from the development of the line of cheap nonperiod furniture and the means of selling it which took place during the two preceding years. The record fails to support this contention. The demand for furniture of this type, as well as the demand for furniture of certain other types during 1943, far exceeded the supply and also far exceeded the demand in the four preceding years. A large part of the petitioner's income from manufacturing during 1943 may have resulted primarily from this increased demand. The petitioner argues in the alternative that, if any portion of the manufacturing income is to be attributed to increased demand, then not more than 12 per cent should be so attributed. The evidence to support this contention is not at all convincing. The tremendous increase in sales, particularly those from jobbing, which obviously were not due to "development" of the cheap line of manufacturing furniture, tends to show that 12 per cent is wholly inadequate. It was held in *Ramsey Accessories Manufacturing Corporation*, 10 T. C. 482, that consideration must be given in cases like this to the question of how much of the earnings for the taxable year may be attributed properly to factors other than those mentioned in (C). The petitioner ignores those possibilities in its evidence, and the Court has no way of weighing them. This question of income attributable to development is closely related to the question of allocating net abnormal income of the tax year to other years. Cf. Regulations 112, section 35.721–7, where an example is given of how income might be attributed to development while at the same time eliminating that part which is attributable to other factors in case the taxpayer is using the developed process, or whatever it is, in its own manufacturing activities.

The next question, if the petitioner had gotten over all of the other hurdles, would be to find some basis for allocating the net abnormal income for 1943 to other years. The part of net abnormal income which is due to improved business conditions resulting in an increased demand for the product in the taxable year should not be allocated to a prior year. *Soabar Co.*, 7 T. C. 89, 97. Development expenditures made in prior years have been recognized as a proper basis upon which to attribute to other years whatever part of the net abnormal income is not attributable to the tax year. *W. B. Knight Machinery Co.*, 6 T. C. 519, 534, et seq; *Rochester Button Co.*, 7 T. C. 529, 553, *et seq.* But the normal cost of sales in prior years is not

necessarily the same as cost of development, and neither cost of sales nor sales in prior years would appear to be a proper basis in this case for the allocation of any part of the net abnormal income of 1943 to prior years. The cost of any development which took place in those preceding years has not been shown and no other reasonable method of allocation has been suggested.

The petitioner has failed all along the line to show that it comes within section 721 and what benefit it should derive from that section if it did come within it.

Reviewed by Special Division.

*Decisions will be entered under Rule 50.*