PRIMAS GROVES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17573.    Promulgated October 5, 1950.

*George E. H. Goodner, Esq.*, for the petitioner.
*Irene Scott, Esq.*, and *Newman A. Townsend, Jr., Esq.*, for the respondent.

---

## OPINION.

Kern, *Judge:* Even if we assume that petitioner has shown under section 721 of the Internal Revenue Code a class of abnormal income [2] and the amount of its net abnormal income,[3] cf. *Geyer, Cornell & Newell, Inc.,* 6 T. C. 96, we believe that petitioner can not prevail, for in our view no part of such assumed net abnormal income can be said to be attributed to years other than fiscal 1943. It is established that "the mere fact that a taxpayer has net abnormal income in a taxable year does not entitle it to relief under section 721. There must be a further finding under the evidence as to what part, if any, of such abnormal income is attributable to other years. If none is so attributable, then the taxpayer gets no relief." *W. B. Knight Machinery Co.,* 6 T. C. 519, 534. See also *Premier Products Co.,* 2 T. C. 445; *Harris Hardwood Co.,* 8 T. C. 874; cf. *The Pantasote Leather Co.,* 12 T. C. 635; H. Rept. No. 146, 77th Cong., 1st Sess., p. 9; Regs. 112, sec. 35.721–3, and sec. 35.721–7.

The basic weakness which underlies petitioner's theory, after indulging in the favorable assumptions, relates to the problem of the attribution of the income to other years. Petitioner has not and apparently can not show what portion of its assumed net abnormal income from the three groves under consideration resulted from developmental activities antedating the year before us, and what portion resulted from activities and circumstances in the instant year. One manner in which it seeks to meet this difficulty is by the contention that the 25 per cent increase under section 721 (a) (1) should cover all such factors. This argument has been presented to us before, and we have held it to be unsound. *Ramsey Accessories Mfg. Corporation,* 10 T. C. 482. We there stated, at page 488: "The petitioner is under a misapprehension in arguing that the 25 per cent increase which is excluded from abnormal income takes care of all of the increases due to various other factors such as management, salesmanship, good will, and the use of physical assets. Income attributable to other factors, as stated above, is never a part of class (C) income. Furthermore, there is no reason to assume that the increase in income due to those factors is limited to 25 per cent or that the increase attributable to development * * * rides as undiluted cream on the top of the volume of increased profits." See also *Producers Crop Improvement Association,* 7 T. C. 562.

---

[2] Although in its claim and at the hearing there was some doubt as to the class which petitioner elected. upon brief, it appears that petitioner is seeking to establish as its class of abnormal income that encompassed within section 721 (a) (2) (C), income resulting from the development of tangible property.

[3] A determination of net abnormal income would be difficult, but perhaps not impossible, cf. *Rochester Button Co.,* 7 T. C. 529. because of the absence of helpful data on the element of direct costs and expenses. Section 721 (a) (3).

We also know, in resolving section 721 claims, that under respondent's regulations,[4] items of net abnormal income can not be attributed to other years, if they were the result, among other things, of increased demand, higher prices, and improvement in business. Petitioner assails the validity of this particular section of the Regulations, but his attack is without merit. We have in earlier cases upheld the validity of that section as "It carries out the intent of Congress and is in harmony with the spirit and purposes of the provisions, as well as the wording thereof." *Soabar Co.*, 7 T. C. 89, 97; *Eitel-McCullough, Inc.*, 9 T. C. 1132. See H. Rept. No. 146, *supra*, at page 10; I. R. C. section 721 (b). Cf. *Southwestern Oil & Gas Co.*, 6 T. C. 1124.

The record here reveals that in the year before us not only was there increased demand for the citrus fruits grown by petitioner, but also that its products were sold at substantially higher prices than in prior years, and that these were the salient factors in the earning of the income which it now seeks to have us attribute to earlier years. Even assuming that there might be merit to petitioner's argument that the increased production and the increased income resulting therefrom arose because of the fact that the new groves reached a more productive level in fiscal 1943 than in earlier years, its application to any issue in the instant case is not borne out by the record even as relating to and Batchelor and Richey groves. The Batchelor Grove had reached an even greater productive level in 1941 than in the year before us. As to the Richey Grove, the increase in its tangerine production followed the general increased production of that fruit during that season in Florida, despite the fact that the total Florida acreage devoted to tangerines was less than in any of the preceding 5 years. Moreover, the second highest productive year in that grove was in fiscal 1939. As to the Sumner Grove, although it may be speculated that some part of its increased production resulted from the natural maturation of the trees and their cultivation, it is noteworthy to observe that the increase in production in that grove in 1943 over 1942 was no greater proportionately that in the Primas Grove for the same period, the

---

[4] Regs. 112, section 35.721–3:

* * * To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 percent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income.

income from which petitioner admits can form no basis for a claim under section 721.

Moreover, as indicated, we are not able to establish a satisfactory allocation which would adjust for abnormal income which might be attributed to increased demand, higher prices or improvement in the business. Even if a portion of the increased income from any of the groves could not be accounted for solely on the basis of the factors of increased demand and higher prices and improvement in business conditions, it is apparent that some part of such income was the result of petitioner's investment in tangible assets—the particular groves— and hence would not be attributable to other years. Regs. 112, sec. 35.721–3. Here, again, we are unable on the record before us, to allocate a definite part of petitioner's income to its investment in tangible assets contributing to the production of such income. Therefore, even on assumption favorable to the petitioner, we see no way to determine what amount, if any, of petitioner's income for the taxable years was attributable to other years. Cf. *Southwestern Oil & Gas Co., supra.*

It is our opinion that this proceeding falls within the general pattern of such cases as *Geyer, Cornell & Newell, Inc., Soabar Co., Producers Crop Improvement Association,* and *Eitel-McCullough, Inc.,* all *supra.* See also *Premier Products Co., supra,* and *E. T. Slider, Inc.,* 5 T. C. 263. We believe that petitioner's income was of the type Congress sought to subject to the excess profits tax,[5] and its claim for relief under section 721 must accordingly be denied.[6]

Reviewed by the Special Division.

*Decision will be entered for the respondent.*

---

[5] In *Soabar Co., supra,* at pages 95 and 96, we stated:

\*     \*     \*     \*     \*     \*     \*

Consideration should be given at this point to the broad purposes which Congress intended to accomplish by the enactment of the excess profits tax provisions. The legislative history of the Second Revenue Act of 1940 and of the Excess Profits Tax Amendments of 1941 shows that the two major purposes of the provisions were, first, to provide additional revenue urgently needed to help meet the costs of national defense program and, second, to prevent the rearmament program from furnishing an opportunity for the creation of new war millionaires or the further substantial enrichment of already wealthy persons. The tax was to apply to corporate profits from all sources, except that every reasonable precaution was to be taken to prevent unfair application of the tax in abnormal cases. See House Rept. No. 146, 77th Cong. (1941-1 C. B 550), and House Rept. No. 2894, 76th Cong. (1940–2 C. B. 496). It is seen from this history and from the provisions of the act that the profits of a taxpayer for the base period years were to be regarded as normal in most cases and the tax was to be applied, generally, to the excess of the profits of the tax year over the prior normal profits. Congress anticipated that business for many taxpayers would improve because of external changes and it intended the tax to apply in those cases. \*   \*   \*

\*     \*     \*     \*     \*     \*     \*

[6] Whether petitioner might have sought and secured relief under section 722 of the Code has not been presented to us, and we make no comment thereon.