OPINION. Arundell, Judge: Petitioner seeks relief from excess profits tax for 1945 under the provisions of section 721 of the 1939 Code which relate to abnormalities in income in the taxable period. Section 721 is designed to afford relief to taxpayers who receive income in the taxable year which is inherently abnormal in character or in amount. W. B. Knight Machinery Co., 6 T. C. 519, 529. Abnormal income, as defined in section 721 (a) (1), means “income of any class includible in the gross income of the taxpayer for any taxable year * * * if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years * * Section 721 (a) (2) describes several separate classes of income and provides that the classification of income of any class not described therein shall be subject to regulations prescribed by the Commissioner. Eelief is provided only with respect to net abnormal income as defined in section 721 (a) (3) ,[1] and only with respect to that part thereof which, under regulations prescribed by the Commissioner, is properly attributable to other taxable years as provided in section 721 (b) .[2] In order to obtain relief, the taxpayer must establish, within the framework of the statute and applicable regulations, (1) the class and amount of abnormal income in the taxable year; (2) the amount of net abnormal income derived therefrom; and (3) the portion of net abnormal income which is attributable to other taxable years. Producers Crop Improvement Association, 7 T. C. 562, Powell-Hachney Grocery Co., 17 T. C. 1489. A separate class of income is described in subparagraph (C) of section 721 (a) (2) as: Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months * * * Petitioner claims that its entire advertising income from the frozen foods magazine is a separate class of income, abnormal in amount, resulting from research and development of tangible property — the magazine — within the purview of subparagraph (C) above, and that it had net abnormal income derived therefrom which is attributable to the prior taxable years 1935-1943, during which period it developed the magazine. Petitioner contends on brief that the amount of its abnormal income is $176,394, which sum represents the petitioner’s gross advertising income for 1945, and that the amount of net abnormal income derived therefrom, before the application of any business improvement factor, is $63,796. It maintains that if an adjustment to net abnormal income to reflect business improvement in the taxable year is proper, the amount of net abnormal income after such adjustment is $42,138. Eespondent denies that petitioner’s advertising income is a separate class of income resulting from “research or development of tangible property” within the intendment of the statute, and he argues that even if petitioner’s advertising income is a separate class of income as described in subparagraph (C) above, and even if petitioner established the amount of net abnormal income derived therefrom as required by section 721 (a) (3), petitioner would not be entitled to any relief since no part of the net abnormal income is attributable to other years under section 721 (b) and the applicable regulations. We question the validity of the petitioner’s argument that its advertising income is a separate class of income as described in subparagraph (C) of the statute. We doubt whether the petitioner’s activities in connection with the publication and promotion of the frozen foods magazine constitute “research or development of tangible property” within the intendment of the statute. Cf. Powell-Hackney Grocery Co., supra; Atlumor Manufacturing Co., 12 T. C. 949. However, we need not decide the question. We agree with the respondent that even if we were to assume, arguendo, that petitioner had net abnormal income under section 721 (a), petitioner is not entitled to relief since it has failed to show that any part thereof is, under the applicable regulations, properly attributable to prior taxable years. Section 721 (b) provides that the amount of net abnormal income that is attributable to other years shall be determined under regulations prescribed by the Commissioner. Treasury Kegulations 112, section 35.721-3, provide, in part, as follows: To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for * * * the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 per cent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. The respondent’s regulations have been sustained as valid by this Court. Soabar Co., 7 T. C. 89. We are satisfied from the record that any net abnormal income which petitioner had in 1945 was due solely to an improvement in business conditions. It was the result of higher prices, increased physical volume of sales due to increased demand for the type of product sold by petitioner (advertising space), and other factors present in the taxable year. Consequently, no part thereof is, under the regulations, properly attributable to other years so as to entitle the petitioner to relief. See Soabar Co., supra; Geyer, Cornell & Newell, Inc., 6 T. C. 96; Eitel-McCullough, Inc., 9 T. C. 1132; Ramsey Accessories Manufacturing Corporation, 10 T. C. 482; Atlumor Manufacturing Co., supra; Powell-Hackney Grocery Co., supra; Dr. P. Phillips & Sons, Inc., 20 T. C. 435. Petitioner, in the first instance, erroneously assumes that the entire amount of its advertising income in 1945 and in the 4 previous years is class (C) income. It has not even attempted to show what part of the advertising income is attributable to such factors as management, salesmanship, and goodwill. Income attributable to such factors is never a part of class (C) income. Ramsey Accessories Manufacturing Corporation, supra, p. 487. Primas Groves, Inc., 15 T. C. 396. Obviously some part of petitioner’s advertising income is attributable to the aforementioned factors and not to the pre-publi-cation and post-publication activities which petitioner characterizes as “research and development.” Moreover, we are unable on the record before us to make any reasonable allocation of some part of petitioner’s advertising income to such factors as management, salesmanship, and goodwill. A further, and in our opinion, fatal weakness in petitioner’s case is its failure to prove that any part of any net abnormal income is attributable to prior years. The observation of the Court in Primas Groves, Inc., supra, page 400, is pertinent here: The basic weakness which underlies petitioner’s theory, after indulging in the favorable assumptions, relates to the problem of the attribution of the income to other years. Petitioner has not and apparently can not show what portion of its assumed net abnormal income * * * resulted from developmental activities antedating the year before us, and what portion resulted from activities and circumstances in the instant year. The evidence is persuasive that petitioner’s assumed net abnormal income in 1945 was due, chiefly, to an increase in advertising rates and increased sales of advertising space. Petitioner admits that its increased advertising income in 1945 was accompanied by an increase in the amount of advertising space sold, and that the advertising rates in effect in 1945 were higher than the average of the rates in effect during the 4 previous years. It argues, however, that a factor of 1.514 when applied to net abnormal income adequately compensates for the improvement in business conditions in the taxable year. We cannot agree. The factor employed by petitioner to measure the improvement in business conditions in the taxable year, 1.514, represents the ratio of the production of commercial frozen food packs in 1945 (1,028 million pounds) to the average production for the years 1941-1944 (679.1 million pounds). Although the fortunes of petitioner’s trade magazine are related to those of the industry which it serves, it is apparent from the record that the production figures for the industry are grossly inadequate for the purpose of measuring the improvement in the petitioner’s business conditions in the taxable year. The evidence reveals that the advertising rates in effect in 1945 were approximately 15 per cent higher than the average of the rates in effect during the 4 previous years. In 1945 the number of magazine pages devoted to advertising was 958 whereas during the previous 4 years the average number of pages devoted to advertising was 340. These facts clearly establish that the increase in petitioner’s advertising income, from an average of $53,933 in the test years to $176,394 in 1945, was due to improved business conditions in the taxable year. Without taking into account other deficiencies in petitioner’s proof, they preclude the allocation of any part of petitioner’s assumed net abnormal income for 1945 to prior years. We conclude that, even on the basis of assumptions favorable to petitioner, no part of the petitioner’s assumed net abnormal income for 1945 is properly attributable to prior years under section 721 (b) so as to entitle petitioner to relief. The respondent’s determination is sustained. Reviewed by the Special Division. Decision will be entered for the respondent. SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD. (a) Definitions. — For the purposes of this section— ******* (3) Net abnormal income. — The term “net abnormal income’’ means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income. SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD. (b) Amount Attributable to Other Tears. — The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary.