EITEL-MCCULLOUGH, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 10001.   Promulgated December 17, 1947.

*Edward Hale Julien, Esq.*, for the petitioner.

*W. J. McFarland, Esq.*, and *Ralph A. Gilchrist, Esq.*, for the respondent.

1140

OPINION.

VAN FOSSAN, *Judge*: In proving a case under section 721, petitioner has both an affirmative and a negative burden. That these burdens are onerous may be admitted, but the burdens are fixed and the proof must be made. Petitioner must show that it had abnormal income of the designated class (here research and development of tangible property, sec. 721 (a) (2) (C)[1]) in excess of 125 per centum of the average amount of the gross income of the same class for the four previous years. "Once the amount of the income of the class for the [taxable] years and the base period is shown then the abnormal amount of the tax years is merely a matter of mathematics under section 721 (a) (1)." *Soabar Co.*, 7 T. C. 89, 94. But it does not suffice to do as petitioner suggests, merely take the income tax net income or loss figures for the base period and one of the two taxable years and apply the formula. This is to prove your case by false assump-

---

[1] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter * * * if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years . * * *.

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income :

 *       *       *       *       *       *       *

(C) Income resulting from * * * discovery, * * * research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months ;  * * *

 *       *       *       *       *       *       *

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. In the case of amounts otherwise attributable to future taxable years, if the taxpayer either transfers substantially all its properties or distributes any property in complete liquidation, then there shall be attributable to the first taxable year in which such transfer or distribution occurs (or if such year is previous to the taxable year in which the abnormal income is includible in gross income, to such latter taxable year) all amounts so attributable to future taxable years not included in the gross income of a previous taxable year.

 *       *       *       *       *       *       *

tions. As said in *Producers Crop Improvement Association*, 7 T. C. 562, 566:

> * * * But such a theory is unsound. The "class of income" described in (2) (C) and in (1) is a "class includible in the gross income." Those provisions and (a) (3), relating to the elimination of costs and expenses, show clearly that a "class" is not to consist of income tax net income, net income, net loss, or any combination thereof.

A taxpayer has "abnormal income" under section 721 (a) (1) only if the income of the taxable years and that of the base period to which the statutory formula is to be applied be "recognized as a separate class." *Geyer, Cornell & Newell, Inc.*, 6 T. C. 96. The statute by its terms requires identification of a "class" of income, either of any class described in subsections (a) (2) (A) to (F), inclusive, or of some other class under the regulations prescribed by the Commissioner with the approval of the Secretary. The petitioner has chosen "research and development in tangible property" (section 721 (a) (2) (C)) as its class. Undoubtedly, some of the petitioner's income in both periods was the product of research and development, just as part of its income in both periods was due to manufacturing. On the record made, however, we can not make even an approximation of an amount of such development income as contrasted with manufacturing income. Throughout the base period, albeit some part of the income was due to development, we also know that much of it was due to sales effort and manufacturing efficiency.

In the taxable years the failure of proof is even clearer. Petitioner's development work was carried on throughout those years. Petitioner's gross income was the result of a concatenation of many factors, viz., high standard of workmanship, advertising and other sales efforts, the unique ability of Eitel and McCullough exercised not only in research and development, but in plant operation and management, and, more largely than any other fact, the greatly increased demand for petitioner's product incident to the defense program, with its normal consequence, the improvement of business conditions. As to the existence of these factors, we have no doubt—no other conclusion is possible on the record. There is no proof, however, from which we can formulate an approximation or even a guess of the amount properly attributable to the vital factors. Thus it is, there is no way on the record made by which to determine in either the base period or the tax years the amount of income attributable to research and development and the amount attributable to manufacturing under improved business conditions, with the consequent inability to determine the amount of petitioner's abnormal income, if any.

In consonance with the above, without more, we would be obliged to rule against petitioner, but there are yet other vital defects in the record.   One requirement of the statute is that the development extend "over a period of more than 12 months."   If it be considered that petitioner's product was various types of vacuum tubes, each tube being a separate product, with but one or two possible exceptions out of the many tube types manufactured, we are unable to hold that the development extended over a period of more than 12 months.   The proof is too general to permit specific holdings as to the time required to develop any of the several tubes.   Even if the petitioner's premise, that the years 1934 to 1940 were exclusively devoted to development, were accepted and if the periods of development of tubes were tacked together so that petitioner's product could be considered as a series of tubes rather than individual tubes, it would not overcome all the deficiencies of proof in the record.   There are still lacking the data on which to allocate the expenses and income attributable to the increased demand for tubes for war end use and consequent improved business conditions.

This requirement of the regulations (Regulations 109, sec. 30.721–3; Regulations 112, sec. 35.721–3) is attacked by petitioner as invalid, it being urged that it imposes an impossible burden and disqualifies all applicants for relief automatically.   We are fully conscious of the difficulty of proof under section 721, but we are not persuaded that it imposes an impossible burden or that the regulation is invalid.   Precise proof may be difficult, but here the record reveals no attempt at proving even reasonable approximations.   There is simply an absence of proof.   In *W. B. Knight Machinery Co.*, 6 T. C. 519, the parties were able to agree on a stipulation measuring the effect on income of increased sales due to improved business conditions.

We would be obliged to shut our eyes to the obvious were we not to hold that a very large part of the increase in petitioner's sales in 1941 and 1942, and consequently its increase in income, was due to the impact of the war in Europe on American business economy, with the unusual demand of the defense and armament program.   Petitioner received its first large contract under that program in 1940.   From 1934 through 1939 petitioner's business had a slow but steady growth. It was only with the stimulus of war orders that petitioner's sales mounted to spectacular figures.   McCullough testified that the sale of radar tubes in 1941 and 1942 was due to the increased demand for tubes in radar sets.   Eitel testified that the bulk of petitioner's production in 1942 was for the Army and Navy and that the same was

probably true in 1941. The sales of the VT127, used in Army radar equipment, in 1940 amounted to $13,866, whereas, in 1941 and 1942 the sales were $744,891 and $3,405,643. The sales of the 304TL, used chiefly in Army and Navy radar equipment, increased from $10,931 in 1940 to $511,159 in 1941 and $1,185,267 in 1942. All of these sales were related to the war program.

Thus it is, in sum, that on the issue of applicability of section 721 we find that petitioner has failed to prove certain affirmative factors or disprove certain negative factors basic to granting the relief sought. The clear inference and conclusion from the record made are aptly characterized in *Soabar Co., supra*, where it is stated:

*. * * Its greater profits in the tax years came to it because of improved business conditions, stimulated, apparently, by the prospect that the war then raging would or might soon involve this country. Congress intended the excess profits tax to apply to such increased or excess profits. See House Rept. No. 146, p. 9, 77th Cong., 1st sess. (1941–1 C. B. 557). The regulation which the Commissioner prescribed, with the approval of the Secretary, carries out this intent by providing that such part of the net abnormal income of a tax year which was due to improved business conditions, resulting in a greater demand for the taxpayer's products, should not be allocated to any other years. It carries out the intent of Congress and is in harmony with the spirit and purpose of the provisions, as well as the wording thereof.

The Commissioner also disallowed a part of the salary of $40,000 paid each to Eitel and to McCullough in 1941 and a part of the salary of $20,000 paid in 1941 and $6,450 paid in 1942 to Harrison, on the ground that the amounts represented excessive compensation.

The successful production and operation of the business of petitioner were primarily due to the ability and efforts of Eitel and McCullough. Both were highly skilled technical men, skilled in the art of making vacuum tubes, and proficient in organization, management, and operation of the company. Sales increased from $200,197.54 in 1940 to $1,827,687.04 in 1941 and $5,232,792.61 in 1942 after war contract renegotiation. These increased sales necessitated expansion in plant, equipment, production, and personnel, in which the three officers carried the burden. The fact that these three men were the only stockholders of petitioner is not important unless the salaries were unreasonable. In the findings of fact we have found that the compensation paid to Eitel and McCullough in 1941 was reasonable in amount for the services rendered by them to or for the petitioner. As to Harrison, we have found the amounts which we deem reasonable. Petitioner is entitled to deduction of the amounts so found.

Reviewed by the Special Division as to the 721 issue.

*Decision will be entered under Rule 50.*