RAMSEY ACCESSORIES MANUFACTURING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11851. Promulgated March 22, 1948.

*Fred L. Kuhlmann, Esq.*, and *Alfred O. Hertzmann, Esq.*, for the petitioner.

*Richard L. Shook, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: Section 721 (a) (2) (C) provides that income resulting from development of patents or processes extending over a period of more than 12 months shall be held to be a separate class of income for the purpose of that section. The petitioner contends that all of its gross income from the sale of steel rings during 1940 and 1941 was of that class. It is obvious that not all of the income from the sale of steel rings during those years can be classified as resulting from development of patents or processes in prior years, because some of those profits must be attributed to other factors, which might include management and salesmanship, good will, and the use of physical assets. *Producers Crop Improvement Association*, 7 T. C. 562; *W. B. Davis & Son, Inc.*, 5 T. C. 1195, 1215 et seq.; *Eitel-McCullough, Inc.*, 9 T. C. 1132; Regulations 109, sec. 30.721–8 (as amended). As a matter of fact, the items necessary to reduce gross sales to gross income in the case of steel rings are not segregated on the books of the petitioner. The petitioner points out that its books were "not kept with prophetic vision as to the future requirements of income tax legislation" (*Rochester Button Co.*, 7 T. C. 529) and attempts to overcome that deficiency by assuming that the cost of goods sold and the discounts, rebates, returns, replacements, and allowances applicable to sales of steel rings bear the same relation to the total of those items as sales of steel rings bear to total sales of all goods. It advocates the use of that method as the best available, at least until the Commissioner suggests a better.

The petitioner next contends that the excess of its gross income from the sale of steel rings during the taxable years over 125 per cent of the average amount of its gross income from the same source during the base years represents abnormal income. The figures for gross income arrived at by the petitioner are $907,698.05 for 1940 and $1,491,719.10 for 1941, and the abnormal income figures are $694,324.67 for 1940 and $994,690.08 for 1941. The parties have stipulated the expenses applicable to steel rings which are deductible in computing

normal tax net income for each of the tax years. The petitioner deducts proper portions of those amounts, in the way described in section 721 (a) (3), from its abnormal income figures just mentioned to arrive at what it regards as net abnormal income of this class for each of the taxable years. The figures which it arrives at for net abnormal income are $131,821.06 for 1940 and $377,122.30 for 1941. It concedes that a portion of those amounts should be attributed to the general improvement or increase in sales of steel rings throughout the industry. It uses some stipulated figures compiled by a pool of piston ring manufacturers to determine how much of the net abnormal income should be attributed to that improvement and concludes that the remainders of $106,307.30 for 1940 and $256,545.78 for 1941 must be attributed in their entirety to the prior years during which it developed patents and processes for the manufacture of steel rings.

There is evidence to show that the assumption made by the petitioner in arriving at gross income from the sale of steel rings was too favorable to the petitioner. An unusually large number of rings other than steel rings were returned during the period 1937 to 1940, particularly during the years 1938 and 1939, so that it could not be assumed that the returns of steel rings would be as large during those years as returns of products of the business generally. Also, there is inconsistency in the figures stipulated to show the amount of returns. Furthermore, the pool figures upon which the petitioner relies to show the general increase in sales of steel rings include sales of "other rings" which were rapidly passing out of use, with the net result that the larger increase in sales of steel rings which would otherwise appear is offset by the decline in sales of "other rings." Also, the pool figures do not include sales of steel rings to manufacturers. There are other defects in the evidence, some of which may work to the petitioner's advantage and some to its disadvantage.

It appears nevertheless that the petitioner had some class (C) net abnormal income for each of the taxable years which properly should be attributed to the prior years during which the development of the patents and processes for manufacturing the steel rings occurred. Congress indicated that these relief provisions should be applied sympathetically. This petitioner should not be borne down upon too heavily because of the absence of better proof, especially where it does not appear that better proof is readily available. Cf. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. This does not mean, of course, that the petitioner should be given everything it asks for or that every doubt should be resolved in its favor.

The respondent is justified in contending that a part of the income from the sale of steel rings during each taxable year must be attributed to factors other than the development of the patents and processes

and is not properly a part of class (C) income. The petitioner is under a misapprehension in arguing that the 25 per cent increase which is excluded from abnormal income takes care of all of the increases due to various other factors such as management, salesmanship, good will, and the use of physical assets. Income attributable to other factors, as stated above, is never a part of class (C) income. Furthermore, there is no reason to assume that the increase in income due to those factors is limited to 25 per cent or that the increase attributable to development of patents and processes rides as undiluted cream on the top of the volume of increased profits. Some part of an increase in profits could properly be attributed to management even though management did not change in personnel. The petitioner has failed to make any allowance for the proven increase in plant, equipment, and capacity, and it does not recognize the acquisition of the Ford business as a factor contributing to the increase in income separate from the patents and processes.

Profits are usually due to a combination of circumstances, including the availability of a salable product, capable management and salesmanship, and an adequate plant. Any increase in sales is probably due to a combination of some or all of such factors. The evidence as a whole does not justify the petitioner's conclusion as to the amount of the income from the sale of steel rings which should be attributed to the development of the patents and processes or as to the amount of net abnormal income which should be attributed to the years during which the patents and processes were developed. While a part of the increase in income from the sale of steel rings is undoubtedly attributable to the development of the patents and processes in prior years, nevertheless, a part must likewise be attributed to the exploitation of the newly developed product through such factors as efficient management, salesmanship, and the use of plant and equipment.

The difficulty of making the essential allocations precisely or even satisfactorily is obvious. Cf. Regulations 109, secs. 30.721-3 and 30.721-8 (as amended) and corresponding provisions of later regulations. If the only income in the class is from royalties under a patent, there is no great difficulty, because then it is all class (C) income. *W. B. Davis & Son, Inc., supra.* But the solution of the present case is not so simple. Also, a similar difficulty is presented in determining how much of the abnormal net income should be attributed to the years in which the patents and processes were developed and how much was due to higher prices, to the Miller patent, not developed by the petitioner, to the increasing demand for steel rings, to the acquisition of the Ford business, and other factors. Fortunately, in this case it is not necessary to make an allocation to any particular prior year because in none of those years was there any excess profits

tax imposed. Allocations in the respects mentioned must be made in this case by exercising common sense and judgment in the light of the proven facts. The Court has made the allocations, reducing somewhat the petitioner's figures all along the way. It is entirely possible that the allocation made by one person would never match that made by another. The Court, after considering all of the evidence in the case, has made ultimate findings which decide the only issue in controversy.

Reviewed by Special Division.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: In my view the findings of fact contained in the majority report have omitted one vital, essential finding of fact in this case, without which there is nothing to support the majority finding of fact that "$70,000 of the net abnormal income of the petitioner for 1940 is attributable to previous taxable years and $150,000 of the net abnormal income of the petitioner for 1941 is attributable to taxable years prior to 1940." The omitted vital and essential fact to which I refer is petitioner's net abnormal income for each of the years 1940 and 1941. The majority nowhere finds what that is.

The provisions of section 721 of the Internal Revenue Code, applicable to a case such as we have here are printed in the margin.[1]

---

[1] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years * * *.

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income :

\* \* \* \* \* \* \*

(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months ; or

\* \* \* \* \* \* \*

All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary.

(3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.

(b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. * * *

Respondent in his brief makes what I think is a substantially correct statement of what the law requires when he says:

In order to prevail the petitioner must, therefore, show the following:

1. That it had income which is within the "class" described in section 721 (a) (2) (C); the amount of such income; and that such amount received in the taxable year was more than 125% of the average income of the same class received for the four preceding years and hence was "abnormal income."

2. That it had "net abnormal income" derived from such "abnormal income."

3. That some part of the "net abnormal income" is attributable not to the current taxable year, but to prior years.

See *W. B. Knight Machinery Co.*, 6 T. C. 519.

When the majority report makes a finding of how much of petitioner's net abnormal income in 1940 and 1941 is attributable to prior years without making a finding of what the net abnormal income is, it is "putting the cart before the horse." In fact if petitioner has failed to offer sufficient evidence to enable us to find what net abnormal income it had in each of the taxable years, it has lost its case. See *Eitel-McCullough, Inc.*, 9 T. C. 1182.

In the *W. B. Knight Machinery Co.* case, among other things, we said:

Therefore, restricting the application of section 721 to the income resulting from the development of the new Knight millers, our task is to determine, *first*, petitioner's net abnormal income as that term is defined in section 721 (a) (3). [Emphasis supplied.]

We then proceeded to find what the taxpayer's net abnormal income was in that case and the figure we reached was $72,053.61. We then found that of that amount $44,501.76 was due to improved business conditions and that under section 30.721–3 of the regulations none of that amount could be attributed to prior years. This left $27,551.85 of the taxpayer's net abnormal income which could properly be attributed to the expenditures which the taxpayer made during the period 1936 to 1940 in bringing its machines to commercial production. We then directed the attribution of this $27,551.85 to the respective years in accordance with a formula which we held to be authorized by the Commissioner's regulations.

I do not wish to be understood as dissenting from the majority opinion that petitioner had net abnormal income in each of the taxable years within the meaning of section 721 of the code. I think it did have, and I think also that the evidence is sufficient to enable us to make a finding in each of the taxable years as to what that net abnormal income is. I think it is also possible for us to make findings of how much of that net abnormal income can not be attributed to prior years under Regulations 109, section 30.721–3, as we did in the *Knight Machinery Co.* case, *supra*. The point I make is that without these

findings our task has not been completed, and that the findings made are insufficient to authorize a finding of how much is to be attributed to prior years, as is done in the majority opinion.

For this reason, I respectfully record my dissent.