OPINION. Blace, Judge: The sole issue in this proceeding is whether petitioner is entitled to relief under the provisions of section 721 of the Internal Revenue Code, the pertinent portions of which are printed in the margin.[1] Petitioner contends that during the year 1943 it had net abnormal income of $110,205.26 of a special class from the construction of four new silicate bath type magnesium smelter furnaces and from two small moving and dismantling contracts connected therewith, which represents income from research and development of a process extending over a period of more than 12 months. Petitioner also contends that this net abnormal income is attributable to the years 1935 to 1943, inclusive, by reason of the expenses incurred in research and development of this process. The respondent contends that the income received by petitioner from the contracts in question does not -come within the class set forth in section 721 (a) (2) (C) because (1) the research resulting in the development of the magnesium smelters did not extend over a period of more than 12 months, and (2) the petitioner has not demonstrated what portion of the income is the result of the use of the process and what portion is the result of other factors, such as manufacturing and installing the smelters: Beginning in 1936, petitioner was actively engaged in original research, which ultimately led to the development of the process for smelting magnesium, as a result of which petitioner realized income which was abnormal in class within the meaning of section 721 (a) (2) (C) of the Internal Revenue Code. As early as 1941 petitioner designed an electric kiln which embodied for the first time the practical application of the process of using the silicate bath for general heating purposes. This was a result of the time, effort, and money spent in the preliminary research prior to 1941. The early research of petitioner represents the first steps in the development of the process of smelting magnesium by means of a molten silicate bath. Respondent’s contention that petitioner’s research did not extend over a period of more than 12 months can not stand because the evidence shows that the process from which petitioner received income in 1943 relates back to research begun in 1936. We have found that petitioner realized net abnormal income in the amount of $110,205.26 during the year 1943. However, petitioner’s right to relief under section 721 is also dependent upon its ability to show that such net abnormal income is attributable to other years and to what extent. W. B. Knight Machinery Co., 6 T. C. 519; Geyer, Cornell & Newell, Inc., 6 T. C. 96. Section 35.721-3 of respondent’s Regulations 112 which deals with this question provides, in part, as printed in the margin.[2] As as already been stated, it is respondent’s contention that none of the net abnormal income can be attributed to other years because “the petitioner has not demonstrated what portion of the income is the result of the use of the process and what portion is the result of other factors such as manufacturing and installing the smelters.” In making this contention the Commissioner seems to rely on that part of his regulations printed in the margin which reads: * * * To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of products sold by the taxpayer, such items shall not be attributed to other taxable years. * * * Petitioner argues, and correctly so we think, that the $55,195.43 renegotiation settlement with the Government out of the profits received from these three contracts takes care of the factor of high prices which is mentioned in the foregoing quoted regulation. Petitioner deducted this $55,195.43 from the $165,400.69 total net income derived from the three contracts here in question in arriving at the net abnormal income whiéh it claims should be attributed to the years of research and development. This, we think, adequately takes care of the factor of high prices. This leaves $110,205.26 net abnormal income which petitioner contends should be attributed to the years including the taxable year 1943, when research and development expenses took place. The petitioner next argues that the factor of low operating costs as mentioned in the regulations is not present in the instant case because the facts show that the operating costs connected with the performance of these contracts were normal for the year in which they were performed and that there was not present any factor of low operating costs. We think that the evidence establishes this to be true, and we so hold. Petitioner next contends that, under the facts which we have in the instant case, the clause of the regulations which speaks of the effect to be given to the factors of “increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer” is not applicable here. Petitioner submits that it is not engaged in a manufacturing business; that it sells services to its customers; that what it did in the taxable year under the main contract was to construct four magnesium smelting furnaces for the Ford Motor Co. and that the other two contracts were dismantling contacts incident thereto; and that the “improvement in business conditions” clause of the regulations is not applicable. Respondent, on his part, argues in his brief that: * * * The idea of submerging an iron retort in silicate was used as the basis for the construction of the furnaces but in their design and construction, petitioner undoubtedly employed draftsmen, engineers, laborers, etc. The service performed by these persons was a thing of value and a portion of the income from the furnaces should have been compensation for it. To the extent that the income is the result of these factors, it is not abnormal income within the meaning of section Y21 (a) (2) (C). Ramsey Accessories Manufacturing Corporation, supra. * * * It seems to us that, under the facts of the instant case, Ramsey Accessories Manufacturing Corporation, 10 T. C. 482, which was, as its name implies, a manufacturing corporation, is not applicable. Here, the petitioner did not increase its plant facilities, it had no plant; it did not increase its capacity, because it was not in the manufacturing business; it did not acquire a new customer, it had serviced Ford since 1917; and it did not increase its sales force, for the sales contracts were made by the three owners of the petitioner, who had always acted in that capacity. Petitioner did not use another’s patents; on the contrary, it was able to earn the $110,205.26 in question because it had at last been able to commercialize on a process which it had developed over a period of several years and which reached its fruition in the taxable year 1943 and was largely due to the personal services and ability of its engineers. These same three men were its officers and stockholders and the directing force of the business. For these reasons we do not think any part of the $110,205.26 in question should be excluded as not resulting from the research and development of the process, on account of the factors used in Ramsey Accessories Manufacturing Corporation, supra. On the contrary, we think this $110,-205.26 should be attributed to the years 1936 to 1943, inclusive, in proportion to the percentages set out in our findings of fact. Respondent contends that petitioner’s method of allocation of net abnormal income to other years is highly inaccurate. It is true that accurate records on expenditures were not kept during the time of petitioner’s research and development, but, as we said in Rochester Button Co., 7 T. C. 529, “a taxpayer’s books are not kept with prophetic vision as to the future requirements of income tax legislation.” We have eliminated from petitioner’s estimate all of the money expended in 1935 and one-half of the amount expended in 1936, which sums were for the acquisition of existing knowledge concerning electric melting and, therefore, in our view, can not be considered as having been expended for research and development of magnesium smelting furnaces within the meaning of section 721 (a) (2) (C) of the Internal Revenue Code and section 35.721-7 of respondent’s Regulations 112.[3]. After eliminating the claimed expenditures which, we think, are not within the intendment of the statute, we have found petitioner’s allocation of expenditures to be reasonable and proper, although they were necessarily based on estimates. Cf. Keystone Brass Works, 12 T. C. 618. Reviewed by Special Division. Decision will be entered wider Bule 50. SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD. (a) Definitions. — For tie purposes of this section — ■ (1) Abnormal income. — The term “abnormal income” means income of any class in-cludible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125.per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence. (2) Separate classes op income. — Each of the following subparagraphs shall be held to describe a separate class of income: *«¥*::•.** (C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; * * * Ü **'*#* * (b) Amount Attributable to Other Years. — The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. In the case of amounts otherwise attributable to future taxable years, if the taxpayer either transfers substantially all its properties or distributes any property in complete liquidation, then there shall be attributable to the first taxable year in which such transfer or distribution occurs (or if such year is previous to the taxable year in which the abnormal income is includible in gross income, to such latter taxable year) all amounts so attributable to future taxable years not included in the gross income of a previous taxable year- Sec. 35.721-3 Amount Attributable to Other Tears. — The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in -whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year, for which the excess profits tax is being computed. Items of net abnormal income are to be attributed- to other years in the light- of, the events in which such items had their origin, and only in such amounts as are reasonable in. the light of such events. To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due. to. in,crea?e,d, demand for or decreased competition in .the type of product sold., by the taxpayer, such items shall not be attributed to other taxable years. Thus no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 percent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. * * * Sec. 35.721-7 Exploration, Discovery, Prospecting, Research, or Development. — The second class of potentially abnormal income specifically set forth in section 721 (a) (2) is income resulting from exploration, discovery, prospecting, research, or development of tangible property (such as mines, oil producing property, and timber tracts), patents, formulae, or processes, or any combination thereof, extending over a period of more than 12 months. The exploration, discovery, prospecting, research, or development must Toe that of the taxpayer. Income resulting from activities of such a character carried on by a predecessor is not entitled to the treatment provided in. section. 721. [Emphasis supplied.l