GENERAL TIRE & RUBBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51537.   Filed February 27, 1958.

*Richard W. Wilson, Esq.*, and *Gustave Simons, Esq.*, for the petitioner.

*Robert E. Johnson, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The question here presented is whether the taxpayer is entitled to the relief accorded by section 721 (a) (2) (C) of the 1939 Code [1] because of a realization during 1942, 1943, 1944, and 1945 of abnormal income due to exploration, discovery, research, or development attributable to prior years.

The taxpayer seeks to qualify for relief under section 721 (a) (2) (C) on the basis of a class of income resulting from conducting research and development of tangible property during the period 1931 to 1940.

The respondent contends that the product in question, Tolex, did not result from Textileather's research and development; that, even if it did so result, such research did not extend over a period of more than 12 months; and, further, assuming that Textileather's research extended over a period of more than 12 months, the respondent contends that the abnormal earnings resulting from the sale of Tolex during the period 1942 to 1945, inclusive, were attributable to factors other than research and development during prior years. On brief, respondent asserts in the alternative that if we should find in favor of the taxpayer on the foregoing contentions, the maximum portion of the abnormal income due to research and development and attributable to prior years is $1,540.03 for 1942, $38,188.35 for 1943, $57,194.51 for 1944, and $36,048.58 for 1945.

The income in question was derived from the sale of Tolex during the years 1942, 1943, 1944, and 1945. The gross income from the sale of the new product, Tolex, during the foregoing years exceeded 125 per cent of the average gross income of the same class for the previous 4 years. Pursuant to the statutory definition of abnormal income contained in section 721 (a) (1) of the 1939 Code,[2] the taxpayer received abnormal income from its Tolex sales during each of the years in issue.

---

[1] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.
(a) DEFINITIONS.—For the purposes of this section—
 * * * * *
(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income :
 * * * * *
(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing extending over a period of more than 12 months ; * * *

[2] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.
(a) DEFINITIONS.—For the purposes of this section—
(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

The record clearly discloses that the abnormal income so received was to some extent the result of a program of research and development conducted by Textileather. The research and development required to perfect the process of manufacture extended over a period greatly in excess of 12 months. Textileather began its research in 1931 because of the civilian demand for a product superior to pyroxylin.

The respondent's argument that the product in question was not the result of the taxpayer's research is without merit. Although it is true that Textileather was unable to perfect a suitable product until the development by Bakelite Corporation of a high molecular weight vinyl resin, there is no statutory requirement that the product resulting from the taxpayer's research and development be completely novel. *Ohio Machine Tool Co.*, 18 T. C. 330; *Keystone Brass Works*, 12 T. C. 618. Prior to the development of the high molecular weight vinyl resin by the Bakelite Corporation, taxpayer had long been engaged in reasearch and experimentation with various types of resins for the purpose of discovering a suitable base for the material it sought to develop, but was unsuccessful. After determining that the high molecular weight vinyl resin was a satisfactory base for the material it was seeking to produce, it was then necessary to develop suitable plasticizers, lubricants, stabilizers, and pigments which comprised the remaining constituents of the desired compound. Such research and experimental activities conducted by petitioner from 1931 to 1940, leading to the development of the formulae and processes used in the production of Tolex, clearly come within the intendment of section 721 (a) (2) (C) of the 1939 Code. *Pantasote Leather Co.*, 12 T. C. 635.

However, the income derived by Textileather during the years in issue from the sale of Tolex was not, to the extent claimed by it, the result of its research and development in prior years.

In our view, a portion of such income was attributable to factors other than taxpayer's research and development activities. During the early war years, 1942 and 1943, petitioner was without effective competition in the production of marketable high molecular weight vinyl fabrics. It appears that with its existing facilities taxpayer's market was unlimited even though its prices were controlled, for it is clear that it produced and sold Tolex at peak capacity throughout the years in issue. These factors, coupled with that of increased demand, due in large part to the cessation during the war years in the production of rubber-coated fabrics, lead us to the conclusion that the proportion of its income attributable to research and development in prior years in reality would be in an amount less than that claimed by the taxpayer. Low molecular weight vinyl fabric was an improvement over pyroxylin-coated fabric.

It was adaptable to more end uses which more closely approached those of Tolex. However, Tolex was in turn a decided improvement over low molecular weight vinyl fabrics with a resultant greater market. It was the first product which met the specifications of end users, established in 1932 and 1933. We are therefore of the opinion that the respondent's use of the sales experience of low molecular weight vinyl fabrics as a basis for comparison in determining an appropriate business improvement factor is conservative. With the exception of the sales figures for pyroxylin, the record is silent with respect to comparative sales figures indicative of the trend of the coated fabrics industry during the years in issue. With respect to pyroxylin, the record does not identify the end users to whom sales were made. We are therefore unable to determine to what extent the market for pyroxylin was coextensive with the market for Tolex.

Utilizing the estimated demand figures for vinyl-coated fabrics for the 4-year period immediately preceding each of the years in issue, we have determined business improvement indices which in our opinion are as accurate as the present record will permit. Cf. *William M. Bailey*, 15 T. C. 468; *Rochester Button Co.*, 7 T. C. 529.

Textileather, on its profit and loss statements for the years 1942 through 1945, has allocated a portion of its administrative expenses as an item of cost incurred in the production and sale of Tolex. We accordingly have adjusted taxpayer's computation of its net abnormal income from Tolex for each year here involved by an amount representing the indicated proportional part of its administrative expenses as an applicable item of direct cost. See *Keystone Brass Works*, *supra; Ohio Machine Tool Co., supra.*

We are unable to find from the record herein that such factors as outstanding management ability, effective salesmanship, goodwill, the acquisition of additional equipment, or the efficient use of plant facilities and other assets were of more than nominal importance in the realization by Textileather of abnormal income from Tolex sales. Consequently, we have made only a small adjustment in the computation of net abnormal income for the foregoing factors. *Ramsey Accessories Manufacturing Corporation*, 10 T. C. 482.

Although we are not unmindful of the difficulties involved in adjusting and allocating amounts of income attributable to various factors and periods of reporting, after careful consideration of all the evidence presented we have determined that Textileather's net abnormal income due to research and development and attributable to prior years is $2,768.62 for 1942, $149,418.19 for 1943, $227,502.06 for 1944, and $179,168.34 for 1945.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*